Good morning, Your Honor. May it please the Court, my name is Amanda Tilly Beeler. I represent the Appellant Plaintiff Kaylee K. Gageby in this appeal arising from her August 26, 2015 application for Title II Social Security Disability Insurance Benefits. I would like to reserve the last two minutes of my time for rebuttal. You may, just keep an eye on your clock. Very of this case involves whether or not the ALJ accurately reflected the plaintiff's limitations in concentration, persistence, and pace in the RFC, and whether the correct legal standards were applied. This gave rise to two different narrow issues that we brought before the Circuit Court today. The first being whether or not the judge violated the law of the case doctrine based on what the District Court had already determined was supported by substantial evidence. And then secondly, whether the evaluation of Dr. Campion's evaluation opinion somehow violated the law of mandate by failing to properly evaluate that, even though the District Court ordered for specific and legitimate reasons to be given for evaluating that opinion. So first, turning to the law of the case doctrine, the Ninth Circuit has indicated that generally the court is prohibited from considering an issue that's already been decided by that same court or a higher court in the same case. In this particular case, we would argue that the ALJ deviated from previous findings in the psychiatric review technique at Step 3 of the sequential evaluation process, where he found moderate limitations in 2018. The District Court, Judge DeSoto, in his remand order in 2021, indicated that that finding was supported by substantial evidence, but then the ALJ came back in 2022 and lowered those limitations to only mild limitations, but essentially only gave the same explanation, provided new, highly probative evidence that would allow the court to understand why he was deviating from that previous decision of the District Court. In the District Court, you didn't invoke the law of the case doctrine, did you? In the District Court, we made the argument, it was more of a logical bridge argument. We did argue that we felt that the ALJ erred in changing his mind on these limitations. We didn't invoke the specific language of law of the case, but we did bring up, this is actually in the excerpt 28.1 page 17, is where we brought this up. So we brought up the that the ALJ made prior decisions, changed those decisions, but failed to create a logical bridge or give an explanation that would allow the court to understand why he made that decision. And you think that's enough to preserve the argument here? I believe it's enough because of the totality of the argument that plaintiff is bringing. The totality of both arguments is that the ALJ erred in bringing forward a specific explanation of why there should be no limitations to account for concentration, persistence, and pace in the RFC. So even though we're bringing a more narrow issue here before the court, the overarching issue is that the ALJ found that the plaintiff could do skilled work and denied her benefits based on that. However, throughout his both decisions, he's alleging that the plaintiff had limitations in the area of concentration, persistence, and pace. In both decisions, he even noted that she has issues with considerable stress. She's overwhelmed in noisy environments. It led her to retire from her job. She had not been given more training or time to adjust to the changes at her job. She may need additional time or she has difficulty maintaining pace in certain work environments because Dr. Choco had indicated she speaks slowly and hesitantly. The ALJ found this in both step three determinations, but then at step four found that there was essentially nothing other than noise, which doesn't make any sense, specifically because the ALJ accepted her subjective complaints about noisy environments causing her concentration issues, but somehow rejected everything else about her inability to complete tasks or the fact that she needed more time on her job to adjust to changes or that considerable stress on her prior job caused her concentration issues. He found that that earlier that that was credible, but then didn't put it in the RFC. All he talked about was noise later on. So that that was the issue. Excuse me, counsel. Yes, this is Judge Schroeder. I wondered if I could ask you a question about, didn't the, I thought the ALJ also found that she had worked for eight years after the accident that allegedly created her disability. Yes, Your Honor. Is that, that appears to be supported by the evidence, does it not? Your Honor, the alleged onset date in this case is not until 2015. So the fact that she was able to work prior to that is not an issue. Well, but what accounted, am I correct that what accounted for the problem was the accident that set some years earlier? Yes, he found organic brain syndrome to be a severe impairment. So, if I can address that just a little bit further, the plaintiff's condition worsened over time. The evidence indicates worsening over time. So even though she was able to work after her accident in 2015, there is evidence that the ALJ seemed to accept that she retired from her job because she had not been given more time or training to adjust to the changes at her job. She became under considerable stress and he seemed to in both of his decisions at step three, he indicated that that was the reason she had to retire from that job. So that was part of one of our arguments about Dr. Campion's opinion is that we didn't feel that the ALJ specific or gave a legitimate reason. We didn't, we felt this wasn't legitimate. How significant for purposes of analysis the change from moderate to mild? The significance is that we don't know. The vocational expert was not given a hypothetical question that would allow for moderate limitations. So we don't know if that would affect the ability to do the skilled work that was found at step four of the sequential evaluation process. The problem with that being is because of her age and education and that skill level, if the vocational expert felt that she could not no longer handle the stress of skilled work or perform the skill level of her past work, she would be entitled to a directed finding of disability benefits under the medical vocational rules. So it's very significant in the sense here that the vocational expert hasn't been posed with a hypothetical question that would reflect an individual that was impaired in this area. The ALJ only put noise and then added the limitation that she could persist and maintain pace. Well, all unimpaired workers have to do that. There's no impairment or limitation there as far as impairment goes, and I will reserve the rest of my time for rebuttal. You may. Thank you. Ms. Bond. Good morning. I agree with my colleague here that the question is, is the RFC accommodating of this claimant's limitations given this record, and it's our position that it is. Regardless of the limitation at step three being a mild or a moderate limitation, the question is always, once you get  past steps two and three, whether the RFC accommodates the claimant's limitations. And so here it is quite clear from this record that the claimant attributed her difficulties with work, and it's the reason she left her job, was because the office configuration changed. She went from an office, like a private office space, to basically a cubicle farm. She described that the cacophony of noise from hearing her colleagues on the telephone, because that's how their jobs changed, they were more on the telephone, that it was very difficult for her to concentrate. She was getting flustered. She was having these difficulties due to the noise levels. And so the ALJ took that into consideration in formulating the RFC here, which limited the noise to only a moderate level, and that moderate level was described as just in an office environment, just typing. So it's eliminating that higher level of noise that she found so difficult to work with. And regardless, again, of whether the ALJ was finding a mild or a moderate limitation at that earlier step, we are only really concerned with, did the RFC accommodate this claimant's limitations, and they do. And what's the whole purpose of the mild versus moderate? Well, at the earlier steps of the sequential evaluation, that's a requirement to engage in PRTF analysis. And then, of course, the district court on remand ordered the ALJ to reconsider the evidence based on Dr. Campion's opinion, and to evaluate, again, whether the moderate limitation was appropriate. Here, the ALJ found the moderate limitation was inappropriate, based on, as your Honor had indicated, she had continued to work at a very high-skilled level job for eight years after her head injury, the motorcycle accident. The ALJ also pointed out that more recently, during the period at issue, she was engaging in activities that were inconsistent with having these very extreme concentration issues. Like, she was still riding a motorcycle, although she went from two wheels to three wheels. She was attending the Sturgis Motorcycle Rally. I think she had told Dr. Moser that she was riding 1,000 miles on her motorcycle. She was hitching her motorcycle to a trailer and driving that to the rally. She was also engaging in, you know, planning for travel and accounting. And so these are activities that would, again, be inconsistent with the level of concentration problems that either she was alleging or that Dr. Campion had proposed. But all of that had been true before, hadn't it? I'm sorry, could you repeat that? All of that was true before, for the ALJ's first decision. Correct. All of that evidence was before him or her. And correct. And so what had happened was that when the ALJ in the first decision overlooked Dr. Campion's second opinion, because Dr. Campion had issued two opinions, actually. Dr. Campion initially said that the claimant had no limitations whatsoever. And then based on some memory testing, I believe from Dr. Moser, said, oh, now she has a moderate limitation. So we do have a lot of the same evidence, but now it's under a different lens where the ALJ was tasked with evaluating Dr. Campion's opinion, but still found that that ALJ had discounted Dr. Moser's opinion using almost identical reasons for now evaluating and discounting Dr. Campion's opinion, and the district court affirmed those reasons. So that is the same evidence, but now it's being used to evaluate Dr. Campion's opinion, which the ALJ had overlooked the first time. So it's still relevant. So is that the reason why the ALJ switched from mild to moderate? From moderate to mild. From moderate to mild, I'm sorry. Well, yeah, and I would say because the, well, but there's also additional evidence that came into the record. We do have the evidence of, you know, again, claimant's continued activities. And I think that with the ALJ looking at Dr. Campion's opinion and evaluating it, realized that the moderate limitation was not appropriate here. That's not what he said. He didn't explain that. Well, what I'm saying is that we have the ALJ evaluating Dr. Campion's opinion, and it's not in the step three portion of the decision. I will agree with that. But the ALJ gives a very thorough evaluation of Dr. Campion's opinion later on. And when this court is evaluating the ALJ's reasons and rationale, it looks to the entirety of the ALJ's decision. And so we have on page 1040 of the record, and that's the ALJ's 2022 decision, we have the paragraph really getting into detail why Dr. Campion's opinion is being discounted. So, and... Right, but I guess the difficulty, and like the, so I'm looking at, you know, the first full paragraph on that page, which includes the statement that moderate limitations and concentration are not supported by the record as a whole, which is fine maybe on its own, but doesn't grapple with the fact that the ALJ on essentially the same facts had previously reached a different conclusion. And I don't know whether it's law of the case really, or just the more general administrative law principle that you have to explain when you're changing your position, but it seems like the explanation for the change is missing there, isn't it? Well, but we have the decision that was vacated. So this isn't a situation, say, where the ALJ is tasked with, you know, explaining like a medical improvement situation. We had a decision that was vacated by the district court and said, you just, you have to address this opinion, this doctor's opinion on remand. Well, did he, but he didn't, he didn't say that the change was on account of evaluating the Campion opinion, did he? Well, I think by the ALJ, by, again on page 1040, in saying that Dr. Campion had assessed the moderate limitation in concentration, persistence, and pace, and then saying I'm giving this opinion minimal weight, we are having an explanation here. And I think that would track back to then explaining why the ALJ did not assess a moderate limitation earlier. But getting back to my original point, even if the ALJ is assessing a mild or a moderate limitation at steps two and three, the question really is whether the RFC accommodated the claimant's limitations. And here it is quite clear that the limitation that was triggering the diminution in concentration, persistence, and pace was the noise level that she was experiencing at her job. And the ALJ, by correcting that, by saying I'm not going to have you working at a job that exposes you to these loud noises, you're not going to experience the limitations that you said you had or that Dr. Campion would say that she had. And that's really ultimately what this court should be looking to, is is this RFC supported, and it is. So regardless of how the ALJ is characterizing the limitation at an earlier step, the pertinent really question is whether this RFC is supported, and it is. And I would just briefly just say that we believe that the law of the case issue was waived below, but even if the court were to address it, there was no violation of law of the case. The ALJ did exactly what the district court ordered her to do, which was to re-evaluate the moderate limitation, and then RFC, whatever RFC limitations were flowing from this record. Do you agree that with counsel's argument that in the district court they at least laid the factual predicate for the argument? I would say they described it, to me, it felt more like it's just a garden variety disagreement with how the ALJ evaluated the evidence on remand. So they didn't like the reasons that were given for rejecting Dr. Campion's opinion. And so that was absolutely preserved, and we can argue about that. But it was certainly not raised as law of the case, and I think a good example of why it wasn't was because the district court didn't address law of the case at all or the rule of mandate below, because, you know, the district court had no reason to address that issue. It wasn't properly raised. I guess the words law of the case, because the words of the law of the case were not part of the argument in the district court. Those words, it's way... Yeah, I mean, that's a very specific, I think, type of argument to make. And so that should have been raised below, but it wasn't. But what it means is, to me, in the context of this case, it means the ALJ changed his or her mind about the nature of the impairment and didn't explain why. Well, but I think what Plame's argument was that, was arguing that the Step 3 finding was set in stone and could not be changed. That, I think, was what they're trying to argue here, but they did not argue really that below. It was, we don't think that the ALJ, you know, explained herself appropriately enough to make the, to have made the change. That's different than a law of the case issue. That's supposed to say, well, it's supposed to say that the ALJ is not permitted to make a change in an earlier step of the sequential evaluation, and that's just not what happened here. That's not what the district court ordered. The district court ordered for a re-evaluation based on Dr. Campion's opinion, which this ALJ complied with, and then gave explanations for why that opinion was not accepted, and then gave explanations for why this RFC addressed the claimant's concentration, persistence, and pace issues based on the exposure to noise levels, and ultimately that should be the determining factor here. Thank you, counsel. Thank you. Yes, just in rebuttal, Your Honor, thank you, and I wanted to touch back on the case doctrine just briefly. We did not argue that the Step 3 findings were set in stone. I believe it's the Johnson case that indicated that if the ALJ is going to deviate from those findings, they must present highly probative evidence to do so. That was not done here. The ALJ basically just relied on the exact same evidence, came to two different conclusions, and she indicated that it was based just on the noise issue. However, the record reflects that plaintiff's condition worsened significantly. There was a hospitalization that she had where she was making homicidal threats to a judge, threats toward family members and friends. She had delusional thoughts. Her examinations were hyperverbal and tangential speech with thought processes that were agitated and labile moods. She appeared manic with flight of ideas. She was overly goal-oriented. The ALJ characterized all these as normal, but these were not normal findings, and so we would argue that it makes no sense that the ALJ would actually diminish the amount of limitation that she had in concentration, persistence, and pace when it was clear from the record that over the period of time, her condition actually worsened. Then just to touch on the daily activities, she mentioned several things about riding a motorcycle or going to a convention or rally, but that doesn't indicate what an individual can do on a regular and continuing basis, eight hours a day, five days a week, which is what the ALJ is required to do. Thank you for your time, Your Honor. Thank you. We thank both counsel for their arguments and the cases submitted.
judges: SCHROEDER, PAEZ, MILLER